WILLIAM H. WATSON, receiver,

*v.*

MATILDA W. CUMMINS et al.

A wife received $1,000 from her father's estate in 1859, which she then loaned to her husband, taking therefor his note, under seal, payable to her sister. In 1867 he paid her the $1,000, and she thereupon surrendered the note. After the note had been given up, she inquired about the payment of the interest, and he promised to pay it.—*Held,* that such interest was not a good consideration, as against an intervening judgment creditor, to sustain a payment of $480 to her in 1882, when in order to obtain the money he and his wife mortgaged the only lands he owned.

---

*Mr. M. Wyckoff* and *Mr. W. H. Morrow,* for complainant.

*Mr. James H. Neighbour,* for defendants.

BIRD, V. C.

This is a creditor's bill. The complainant is a receiver appointed by a court of law in aid of the creditor. He files this bill to reach the sum of $500 in the hands of one of the defend-

ants, Matilda W. Cummins, alleged to have been paid to her by·
her husband, Johnson J. Cummins, the debtor, and received by
her, to cheat and defraud the judgment creditor, George W. Bar-·
ber. The judgment is for $3,260.01. The defendant Johnson
J. Cummins was the owner of about one hundred and twenty-·
five acres of land, on which he resided with his wife. There·
were encumbrances upon this land. He was indebted to others
in considerable sums. He borrowed of Mary B. Wood $3,500,
for which he and his wife executed a mortgage to her. He·
applied $3,000 of this money to the payment of many of his·
liabilities, but no part of it to the Barber judgment. The re-·
maining $500 borrowed of Mary B. Wood he gave to his wife,.
and they both declare that it was in payment of a debt due from
him to her of long standing. He conveyed his land to her the·
day after he gave the mortgage.

They both testify, and so does their daughter, that Mrs. Cum-
mins, in 1859, received from the administrators of her father's
estate $1,000; that she loaned this sum of money to her hus-
band and took from him therefor his promissory note, made·
payable to one of her sisters; that she had the note made under·
seal; that she had it executed in the name of her sister because she·
had learned that a husband and wife could not contract directly·
with each other, and that she held this note until the year 1867..
In this year her husband paid the $1,000 principal, and she
surrendered the note. There was then at least eight years' inter-
est due. After the note was delivered to the husband the wife·
inquired about her interest, and the husband said he would pay
her that.

That interest was not paid until in September, 1882, more than
fifteen years after the payment of the principal and the cancella-·
tion of the note. When paid, the husband was largely indebted
beyond his ability to pay. He paid it out of money borrowed
by mortgaging his only real estate, his wife joining in the mort-
gage. He paid it after the debt on which the judgment now
sought to be enforced had been running a long time, and, I think,
after the wife was fully apprised of his peril. She knew he had.
been threatened with an action.

Supposing the husband to be under a legal liability, I will not stop to consider whether or not, under the circumstances of this case, the parties were both guilty of fraud; for, in my judgment, there was no liability whatever, either at law or in equity. Could she have *enforced* such a claim? I am quite sure not. She destroyed, voluntarily, the evidence of the claim, and certainly no court would listen to her demands. Was there really any interest due? The note would be the best evidence of that. It may well be said that after this long lapse of time, who can tell whether the note drew interest or not? It is true the payer and holder was and is a woman. Yes, but it must be remembered that she took extraordinary care, for a woman, in having the note sealed and made payable to her sister. It requires an effort to believe that a woman so cautious would have surrendered a note for destruction on which was due the sum of $480, and accept the promise of the husband and depend on his word alone for payment.

But the lapse of time is so great as to forbid a favorable consideration of her claim. The demand is stale indeed. If claims of this character should be permitted to stand in the way of creditors, it would be easy, indeed, to defeat their just expectations, in many instances. It was not only stale, but the law ought to regard it as abandoned. Mrs. Cummins says she never urged her husband to pay it. Notwithstanding her statements, I think the proposition of payment came from him, and for the first time after he had borrowed the $3,500. She says that her husband determined the amount due. And this, certainly, was taken at random, for in 1867 the amount due and which it is said was then promised, was $480, which, with the interest for fifteen years, was $912. If Mrs. Cummins had any just claim at all, she was entitled to that sum. I refer to this (not forgetting that she could forgive the debt or any part of it) to show that there was no honest accounting between them. There is no proof whatever to establish the relation of debtor and creditor.

I think this case is fairly within that of *Luers* v. *Brunjes*, 7 *Stew. Eq. 19*, and the cases there cited. *S. C., 7 Stew. Eq. 561.*

I will advise a decree declaring the transaction respecting the

$500 between Mr. and Mrs. Cummins, fraudulent and void as to the complainant, and that the complainant is entitled to receive the same from Mrs. Cummins, with interest from the time she received it, and costs to be taxed.